WILLIAM KEYSER ET AL. *vs.* GEO. M. UPSHUR, JOHN T. MORRIS AND EDWARD H. FOWLER, BOARD OF POLICE COMMISSIONERS FOR THE CITY OF BALTIMORE.

*Appointment of Police Officers in Baltimore City—Nomination by Police Examiners—Police Commissioners May Select from Graded List— Powers and Duties of Examiners and Commissioners—Oath of Office.*

Under the Acts of 1900, chapters 15 and 16, the Board of Police Examiners for Baltimore City are required to conduct competitive examinations of applicants for appointment to or promotion in the police force and to report to the Board of Police Commissioners graded lists of those found to be qualified, the names being arranged in the order of merit as ascertained by the examination. The Police Commissioners are required to confirm or reject all nominations made by the Examiners, according to their best judgment concerning the fitness of the applicant, and to appoint as policemen only persons nominated by the Examiners. The Board of Examiners furnished to the Commissioners a list containing 290 names of persons eligible for appointment, arranged in the order of merit. The Commissioners selected therefrom twenty persons as officers, but not in the order in which their names appeared on the list. Plaintiffs, taxpayers of the city, filed the bill in this case, alleging that these twenty persons were not legally appointed, and asking that the commissions issued to them be cancelled and payment of their salaries restrained. *Held,*

1st. That since the statute does not require that the Examiners shall nominate only so many names as there are vacancies to be filled, the list of 290 names of eligibles furnished to the Commissioners, when only twenty vacancies were to be filled, was not unlawful, and the Examiners had the power to nominate from the list of eligibles either the precise number required to fill vacancies or a greater number.

2nd. That if the list of 290 names furnished by the Examiners to the Commissioners was intended by the former to be a nomination under the statute of all these persons, in the order of merit as they stood enrolled, there was a compliance with the law, and the cause is remanded to the end that this question of fact raised by the pleadings may be determined.

3rd. That the statute does not require the Commissioners to select the officers to be appointed in the order in which their names appear on the list, or to take up the names in that order and one by one confirm or reject them, but the Commissioners are authorized to exercise their

judgment, without regard to political or ecclesiastical bias, in selecting their appointees from the whole list.

4th. That the action of the Board of Police Commissioners, by which it appeared that upon "nomination" by the different Commissioners, twenty persons were unanimously appointed probationary officers, being selected indiscriminately from said list, was not in violation of the statute which required them to confirm or reject nominations made by the Examiners, and that appointments should be made by a yea and nay vote.

5th. That the whole 290 persons so nominated must be either appointed or else must be finally rejected, on the sole ground of unfitness, before new lists of eligibles can be procured from the Examiners and before the Examiners can make any additional nominations.

6th. That the provision in one section of the statute that nominations for appointment shall be made by the Police Commissioners was manifestly intended to mean by the Examiners to the Commissioners, and should be so construed.

Although the Legislature cannot prescribe as a qualification for holding an office any other oath than that prescribed by the Constitution, Art. 1, sec. 6, still when an Act does prescribe a particular form of oath to be taken by an officer, its terms may be treated by the Court as defining some of the duties of the office.

Appeal from a *pro forma* order of the Circuit Court of Baltimore City, refusing the injunction asked for in the bill of complaint.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Edgar H. Gans* and *R. E. Lee Marshall* for the appellants.

*Bernard Carter* and *Alonzo L. Miles* for the appellees.

McSHERRY, C. J., delivered the opinion of the Court:

Recent legislation adopted by the General Assembly of this State during the session of nineteen hundred, and relating to the police system of Baltimore City, gives rise to the pending controversy. By the *Act of 1900, ch. 15,* the method of selecting Police Commissioners of Baltimore City was changed from an election by the two Houses of the General Assembly to an appointment by the Governor with the advice and con-

sent of the Senate.   In the oath which this Act requires the
Police Commissioners to take it is declared that the commis-
sioners shall in no case and under no pretext appoint, pro-
mote, reduce in rank or remove any policeman or officer of
police or detective or any other person under them for or
on account of the political opinions or affiliations of such
policeman, officer, detective or other person or for any other
cause or reason than the fitness or unfitness of such person *in
the best judgment of said Commissioners*, for the place to which
he shall be appointed or from which he shall be removed.
Whilst this oath cannot be prescribed under *sec. 6, Art. 1* of
the State Constitution as a qualification for holding the office
of Police Commissioner, because no oath other than the one
set forth in the Constitution itself can be imposed by the Leg-
islature for such a purpose—*Davidson's case*, 91 Md. 681—
still the terms of the oath may well be treated as defining
some of the duties of the office.   Though a refusal to take
this statutory oath would not deprive the Police Commissioner
of the office if he qualified by subscribing to the oath pre-
scribed by *sec. 6, Art. 1* of the Constitution, the things which
the statutory oath undertakes to require him to swear that he
will do or will refrain from doing may be regarded as part of
his duty when he has qualified by taking the Constitutional
oath.   The relevancy of these observations will become appar-
ent when we come to the consideration of some of the ques-
tions at issue in the cause.

By the *Act of 1900, ch. 16*, a board of Police Examiners
was created.   This board is charged, amongst other things,
with the duty to inquire into the mental, moral and physical
fitness of all applicants for appointment to or promotion in the
police force of Baltimore City.   The same board is likewise
required to report to the Police Commissioners " graded lists
of those persons whom they may deem qualified for such ap-
pointment or promotion, from which graded lists all nomina-
tions for, appointments to, or promotions in said police force
shall hereafter be made ;" and the nominations must be made
in the order in which the names of the nominees appear upon

such graded lists. By a singular omission, *sec. 745D.* is made to read that the *nominations* for appointment or promotion shall be made by the Police Commissioners, instead of by the Board of Police Examiners *to* the Board of Police Commissioners. This error is so obvious when other parts of the statute and the whole scheme and purpose of the legislation are considered that in disposing of the case before us we will read the enactment as it ought to have been written and we will supply the missing words as was done by the counsel on both sides during the oral argument. In preparing these graded lists the Board of Examiners is required to ascertain by open competitive examinations the relative qualifications of the respective candidates for appointment or promotion, and it is also required to place the names of the accepted candidates upon the graded lists in the order of their relative qualifications as ascertained by such competitive examinations. *By sec. 475F,* it is enacted, "that the said Board of Police Commissioners for the city of Baltimore shall confirm or reject all nominations for appointment or promotion of police officers * * * made to it as hereinbefore provided by the Board of Police Examiners of the city of Baltimore. The said Board of Police Commissioners shall not confirm the nomination or make the appointment or promotion of any police officer * * * * whose name does not appear upon the graded lists to be furnished said Board of Police Commissioners by said Board of Police Examiners for the city of Baltimore."

Under this legislation the Board of Examiners inquired into the fitness of quite a number of applicants and a list of two hundred and ninety names of persons eligible for the grade of probationary officers arranged in the order of merit as disclosed by the examinations, was furnished by the Board of Examiners to the Board of Commissioners. The exhibits filed with the bill of complaint show that this graded list made by the examiners was in the possession of the commissioners and that it was taken up and considered by the latter. From this list the Police Commissioners selected twenty persons to

be probationary officers, but the selections were not made in the order in which the names appeared upon the list of eligibles. The selections were made indiscriminately, that is promiscuously from the list. Thereupon the appellants who are tax-payers in the city of Baltimore and also members of an unincorporated association known as the Reform League, filed a bill of complaint in the Circuit Court of Baltimore City against the Board of Police Commissioners, in the tenth paragraph whereof it is alleged : " That the said attempted appointment of the said twenty persons above named to the positions of probationary officers was * * * * * in violation of the requirements of said chapters 15 and 16 of the Acts of the General Assembly of 1900 * * * especially in that, among other things, the said persons so attempted to be appointed were not nominated by the Board of Police Examiners to the said Board of Commissioners, and by the latter confirmed as is by said Act required, but the said defendants undertook to appoint them without such nominations, and that neither the nominations for such attempted appointments nor the said attempted appointments were made or undertaken to be made from said graded list in the order in which the names of the nominees appear thereon ; wherefore and for other good and sufficient reasons, * * * * your orators aver that the said attempted appointment of the said twenty persons was illegal and void," etc. The relief prayed is that the Police Commissioners be restrained from paying to the probationary officers so appointed any salary, and that they be required to recall and cancel the commissions heretofore issued to these twenty officers. A *pro forma* order was passed refusing to grant an injunction and the plaintiffs appealed.

There are two predominant propositions in the case, and these involve in their consideration a discussion of the powers and duties of the two Boards. The two propositions for which the appellants contend are, *first*, that the twenty probationary officers were not nominated by the Board of Examiners to the Board of Commissioners ; and *secondly*, that the appointments of the twenty officers were not made by the Board of Com-

missioners from the graded list in the order in which the names of the nominees appear thereon, and therefore that the appointments were illegal. As we progress in the investigation of these propositions other questions mainly concerning the method of doing the things, which it is insisted were unlawfully done, will be disposed of.

As heretofore observed one of the unmistakable and conceded designs of the *Act of 1900, ch. 16,* creating the Board of Examiners, was to require that board, in addition to the other functions assigned it, to send in nominations of eligible persons to the Police Commissioners whenever vacancies were to be filled and new appointments or promotions in the police force were to be made. As the fundamental object of all this recent legislation was to make merit and fitness the sole qualification for service on the police force, these nominations were restricted to the list of eligibles made up by the Examiners after open competitive examinations. The Examiners are given no power to appoint to the force. They examine and pass upon the qualifications of applicants and then they nominate or name to the Commissioners such applicants as are found to possess the requisite qualifications, and they name them in the order of merit as disclosed by the examinations. But it is insisted by the appellants that the Examiners can only nominate one applicant for each vacancy or appointment, and consequently if there be twenty vacancies or twenty new appointments to be made, but twenty names can be furnished by the Examiners to the Commissioners ; and that those twenty must be the ones who stand highest on the list of eligibles. It is true beyond question that all nominations by the Examiners must be made in the order of merit as disclosed by the examinations, but there is no provision whatever in the statute limiting the *number* that may be nominated at any one time. Nominating, as used in this statute does not mean " the act or ceremony of bringing forward and submitting the name of a candidate especially for an elective office, according to certain prescribed forms ;" but it means primarily, naming, mentioning by name. *Cent. Dic. vol. 5, p. 4010;* The argument

drawn from the meaning of the term nominate as political·
usage has defined it to indicate the selection of a candidate to
be voted for at a popular election is not sound ; and the illus-.
tration is not apposite.    No political party can nominate more
than one person for an office to be filled by one incumbent
because the statutes do not authorize such a course ; and if
they did the nomination of two or more persons for the same
place would simply divide the vote of that party and insure
the defeat of all thus named by the same organization.    That
consideration alone would prevent the nomination by one party
of two or more persons for the same place.    But there is no
analogy between such a nomination and nominations by the
Board of Examiners.    Nominations for office involve selections
of particular candidates to be voted for.    Nominations by the
Examiners consist simply in naming a number of eligibles from
amongst whom the Commissioners must make selections.    The
duties devolved upon the Examiners indicate this:    Some of
those duties have already been mentioned but all of them may
be briefly summarized as follows :    *First*, to prescribe, amend
and enforce definite and uniform rules and regulations for
carrying the statute into effect, which rules and regulations
when adopted shall have the force of law ; *secondly*, to ascer-
tain by open, competitive examinations the relative qualifica-
tions of every applicant for a position on the police force ;
*thirdly*, to make out graded lists of the applicants whom they
may deem qualified, on which lists the names of those who
are found to be qualified shall be arranged according to merit ;
and *fourthly*, they must furnish this list to the Police Com-
missioners and *from* it, either independently and by a separate
act, or *by* it as a whole when furnished—*and the statute does
not prescribe which*—all nominations must be made by them
to the Board of Police Commissioners.

·  We do not doubt that under the authority to make definite
and uniform rules and regulations the Police Examiners could
validly prescribe that no number of names in excess of the
number of places to be filled should be nominated at any one
time ; but this has not been done.    If this be a matter which

may be regulated by a rule of their own adoption—and it clearly is—it is because the statute, as rightly interpreted, is silent on the subject; and if the statute is silent on the subject—as it is—then, it cannot be said that the contrary course, that is, the nomination of *more* persons than there are vacancies to be filled or appointments to be made, is a method of nomination prohibited by the statute. We are dealing not with what the Examiners *did*, but with what they had the *power to do*. Now, there are but two ways in which the Examiners could make nominations to the Commissioners; and these are *either* by naming the *precise* number required to fill existing vacancies or to make new appointments, *or* by furnishing *more* than the identical number. In both instances all names nominated must be on the list of eligibles; and in both instances the names must be *from* the graded list and in the order in which they appear upon that list; but which of the two methods should be pursued is left by the statute to the judgment and discretion of the Examiners as they may see fit to prescribe by rule or regulation, and in the absence of a rule or regulation in such way as they may elect. They have apparently adopted no rule prohibiting themselves from nominating more persons than are necessary to fill vacancies or to make new appointments and as the nomination of *more* than the precise number required is one of the two methods open to them, their act, when they nominated two hundred and ninety persons, though only twenty appointments were to be made, was, if they made any nominations at all, neither unlawful nor unwarranted. The fallacy, which the contention of the appellant contains, consists in the assumption that not more than one person can be nominated for one vacancy or one new appointment and that consequently the Examiners are restricted in making nominations to the Commissioners to the naming of the precise number of persons required to fill existing vacancies or to make new appointments. If this assumption were well-founded it would follow, of course, that the nomination of two hundred and ninety persons to fill twenty places would be irregular and unlawful. But the assumption is untenable—the postulate is

erroneous—as has been pointed out, and the reasoning founded upon it, though logical and accurate, cannot lead to a correct conclusion.

Having considered what the Board of Examiners had the power to do, what in fact *did* they do?  As shown by Exhibit F, filed with the bill of complaint, the Board of Examiners furnished the Board of Commissions with a graded list of two hundred and ninety eligibles, which list the Commissioners took up, and then proceeded to consider the names as those names appeared thereon.  This furnishing of the whole list was evidently treated by both Boards as a nomination of all the persons appearing thereon in the order of merit as they stood enrolled.  If this was intended by the Examiners to be a nomination of all the persons named on the graded list, then there was a compliance with the statute as we have just above indicated and determined.

It is contended by the appellants that the selections of the twenty probationary officers by the Police Commissioners from the graded list were not made in the order in which the names of those chosen were recorded upon that list, and that, therefore, the appointments were unlawfully made and are void. It may be, and indeed is, conceded that the selections were not made in the order in which those chosen appeared upon the list; but it does not thence follow that the action of the Commissioners was unauthorized.  Such action could not be unlawful unless some express or implied provision of the statute required that the officers appointed should be selected in the order in which their names were entered on the list.  But there is no such provision.  As we have seen, the duty of the Examiners is to furnish a list of eligibles.  The duty of the Commissioners is to make the appointments from that list.  In the oath prescribed for the Police Commissioners by the *Act of 1900, ch. 15,* (which oath though not a prerequisite to their qualification, as heretofore indicated, may be treated as defining or prescribing some of their duties) they are prohibited from making appointments on account of political preferences, and they are to be controlled therein by no other cause or

reason than the fitness of the person appointed as ascertained "in the best judgment of said Commissioners." By *sec. 745F,* appointments by them are expressly forbidden to be made because of "ecclesiastical and party ties." By the same section it is declared that they "shall not confirm the nomination or make the appointment or promotion of any police officer * * * * whose name does not appear upon the graded lists to be furnished" by the Board of Police Examiners. The statutes declare what the Commissioners shall do and what they shall not do in making appointments. They are prohibited from heeding political bias ; they are not allowed to be influenced by ecclesiastical ties, and they are distinctly forbidden to confirm the nomination or to make the appointment or promotion of any police officer whose name does not appear upon the graded list ; but they are nowhere constrained to make appointments in the order in which the names furnished them are recorded on that list. Indeed, such a provision, had it been inserted, would, to a great extent, have been in conflict with the right to select according to the *fitness* of the applicant as ascertained in the *best judgment* of the Commissioners.

If a positive requirement that they should make the appointments in the order of merit, as disclosed by the list, would have been in conflict with the discretion given to them by the mandate requiring them to exercise their best judgment ; it is obvious that no implication can be raised, in the absence of such a requirement to supply its omission, because the implication that the order in which the names appear on the list must be followed, would be no less hostile to the exercise of their best judgment by the Commissioners than a positive provision to the same effect would have been. When the statute in terms imposes no such restriction upon them, and when no such restriction is involved in any of the prohibitory declarations contained in the statute, it would be unwarranted judicial legislation to read into the enactment a requirement which the General Assembly, as well as the framers of the legislation, have not seen fit to write there ; and which, if it had been written there, would have been

incongruous because at variance with the right distinctly confided to the Police Commissioners to exercise their best judgment in making appointments. They are bound to exercise their judgment in determining the fitness of candidates for appointment; and they are bound to exercise that judgment in determining the fitness of persons nominated to them by the Examiners; but there is not a sentence in the law which requires them to take up the names in the order they appear and one by one, in that order, confirm or reject them. The exercise of judgment involves comparison. Comparison is impossible without things or persons to be compared; and, therefore, unless the whole list can be looked to there can be no exercise of judgment, though there may be arbitrary action. Selections according to the order in which the names appear on the graded list, and therefore according to the *Examiners'* estimate of the fitness of the candidates would not be, or might not be, selections according to fitness in the best judgment of the *Commissioners*, though it is fitness according to the best judgment of the latter which is to control and govern them in making appointments.

It is singular that the statute reposed in the Police Commissioners a discretion to be exercised according to *their* best judgment and distinctly refrained from directing them to make the appointments in the order in which the names of the eligibles appeared upon the graded list, if the purpose of the Legislature was to restrict the Commissioners in the exercise of their judgment, and if the design of the legislation was to prohibit them from making selections from the whole list indiscriminately and without regard to the order in which the names appeared thereon. A construction which imputes to the Legislature such a purpose and to the legislation such a design would involve an obvious and a palpable inconsistency. There can be no exercise of discretion by the Police Commissioners if the statutes tie them inexorably to the recorded judgment of the Examiners; and yet the confirmations or appointments are to be made by the Commissioners as *their* best judgment may dictate from *amongst* the persons found by the

Examiners to be eligible, whilst the statutes give to the Examiners the right to *nominate* persons for appointment, they give to the Commissioners the power to *make* the appointments. In making those appointments if the Commissioners must follow the order in which the names appear on the graded list, when more nominations are made than there are places to be filled, they would be compelled to act, not according to their own best judgment, but largely in compliance with the judgment of the Examiners.

We come now to consider what the Police Commissioners did. Upon turning to the record it will be found from the minutes of their proceedings that at their meeting of December the seventh the following action was had : " To fill the vacancies in the grade of probation officers caused by the appointment " of certain probation officers to be patrolmen, " the Board took up the eligible list for probation officers and considered the names as they appeared thereon. All those on said eligible list preceding the names respectively of those selected for appointment, as shown below, were, by unanimous vote, rejected." " Nominated by President Upshur," four persons. " Nominated by Mr. Morris," thirteen persons. " Nominated by Mr. Fowler," three persons. " The following named on the eligible lists for the grade of probation officers were by *unanimous* vote appointed probation officers," and then follow the names of the twenty persons " nominated " by the members of the Board as above indicated. These twenty persons were not selected in the order in which their names appeared on the graded list. Are these proceedings in accord with the requirements of the statute ?

It is insisted that these proceedings were irregular because, *first*, the Commissioners have no power to *nominate*—they can only confirm and appoint or reject nominations made by the Examiners ; *secondly*, because the provisions of *Sec. 741*, *ch. 15*, *Acts of 1900*, requiring all appointments to or removals from the police force to be made by yea and nay vote of the Commissioners was not observed ; and, *thirdly*, because the Commissioners should have taken " up the names on the

graded list in order, one at a time," considered "each nomination on its own merits, having regard to nothing but the fitness or unfitness of the nominee, pass on the nomination by either confirming and appointing or by rejecting, record their yea and nay vote on the appointment or rejection and pass on to the next in order." We will consider these reasons inversely.

As has been shown the Commissioners were not required by the statute to follow the course just suggested. In dealing with the two hundred and ninety names to fill twenty places on the police force they could not confirm and appoint *all*, and they were under no obligation to reject those who were not confirmed and appointed. In selecting they could pass over a number without finally rejecting any thus passed over, because they were not bound to consider the persons named on the list in the order in which they were named. The requirement that they shall confirm or reject all nominations for appointment or promotion obviously means that all eligibles nominated by the Examiners at any one time shall be ultimately confirmed or rejected before new nominations can be asked for or made; and their action in rejecting "all those on said eligible list preceding the names respectively of those selected for appointment" amounted to nothing more than a declaration that the persons chosen were in the judgment of the Commissioners better fitted to be officers than were others who ranked higher on the graded list. But this did not involve or imply the final rejection of those not selected. These latter were not rejected because not fit to be policemen; but they were in a qualified sense rejected, that is to say they were set aside temporarily because by comparison with those chosen they were not *as fit*, in the judgement of the Commissioners, to discharge the duties of police officers as were those who were selected. But they have not been finally rejected. The whole two hundred and ninety must be either appointed or else must be finally rejected on the sole ground of unfitness before new lists of eligibles can be procured from the Examiners, and before the Examiners can make any additional nominations.

Section 741 requiring all appointments to and removals from the police force to be by yea and nay vote of the Commissioners was substantially complied with. These appointments were unanimously made. That means that each Commissioner voted for them. When it is stated on the record of their proceedings that the members of the Board have unanimously done an act, it is asserted that each united in doing that act, and this is equivalent to saying that each voted aye. It would be a most rigid refinement to hold that a declaration that *all* the members of the Board voted to appoint these officers was not the same thing as a statement that every member had concurred in doing so. If every member did concur then these appointments were made by the affirmative vote of every member and thus the record discloses in plain language susceptible of but one meaning that *all* the Commissioners voted aye upon the appointment of these officers.

Finally it is maintained that because each Commissioner " *nominated* " some of the twenty officers declared elected there was no valid choice. It is perfectly obvious that the word " nominate " as used in the proceedings of the Board of Commissioners does not mean what it signifies when employed in the statue to describe one of the duties of the Examiners. The Examiners alone are authorized to nominate ; but the Commissioners select from those who have been so nominated. Manifestly what the Commissioners meant to do and did do was to *name* from amongst the list of those who had been nominated by the Examiners, twenty persons for appointment. The nomination of two hundred and ninety persons including the twenty subsequently selected had already been made by the Examiners, if they nominated at all ; and in the exercise of his judgment each Commissioner named or designated some of those previously nominated by the Examiners, as best fitted to be officers ; and when that designation was unanimously approved, it was the unanimous appointment of persons nominated, not by the Commissioners but by the Examiners.

The discussion thus far has proceeded upon the theory that the Examiners in delivering the graded lists to the Commissioners nominated the whole two hundred and ninety names. The Bill of Complaint, however, alleges that the probationary officers were appointed by the Board of Police Commissioners without having been nominated by the Board of Examiners at all. In the face of that allegation, as the application for the injunction is founded on the bill and exhibits only, the record must be remanded so that an answer may be filed. If it be then shown that all the names on the entire list of two hundred and ninety were nominated and were intended to be nominated by the Examiners when they sent to the Commissioners the graded list, the allegation of the bill that the Examiners made no nominations will be disproved and that ground of relief will fall.

As it will be necessary for the reason just suggested to remand the record in the cause, it will be sent back to the Circuit Court under *Sec. 36 Art. 5 of the Code* for further proceedings without now affirming or reversing the order appealed from.

> *Cause remanded under Sec. 36 Art. 5 of the Code without affirming or reversing the order appealed from. The costs to abide the final result,*